# District of Columbia
# Office of the State Superintendent of Education
## Office of Dispute Resolution
1050 - First Street, N.E.; Washington, D.C. 20002
(202) 698-3819   www.osse.dc.gov

**Confidential**

| | |
|---|---|
| **Parent on behalf of Student**[1] | Case No. 2022-0171 |
| Petitioner | Hearing Date: November 30, 2022 |
| v. | Conducted by Video Conference |
| ▮▮▮▮ School | |
| and | Date Issued: November 30, 2022 |
| **Office of the State Superintendent of Education** | |
| Respondents | Terry Michael Banks, Hearing Officer |

## AMENDED HEARING OFFICER DETERMINATION

### INTRODUCTION

Petitioner is the mother of an X-year-old student ("Student") attending School A. On September 14, 2022, Petitioner filed a Due Process Complaint ("*Complaint*") alleging that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ School (▮▮▮▮▮▮"), Student's local education agency ("LEA"), and the Office of the State Superintendent of Education ("OSSE"), the state education agency ("SEA"), has denied Student a free appropriate public education ("FAPE") by failing to provide Student consistent transportation to school during the 2022-23 school year. On September 23, 2022, ▮▮▮S filed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Response* (▮▮▮▮ *Response*"), denying that it had denied Student a FAPE in any way. On September 24, 2022, OSSE filed *Office of the State Superintendent of Education's Response to Complaint* ("*OSSE Response*"), denying that OSSE had denied Student a FAPE in any way.

---

[1] Personally identifiable information is attached in the Appendix and must be removed prior to public distribution.

## SUBJECT MATTER JURISDICTION

This due process hearing was held, and a decision in this matter is being rendered, pursuant to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. Section 1400 *et seq.*, its implementing regulations, 34 C.F.R. Sect. 300 *et seq.*, Title38 of the D.C. Code, Subtitle VII, Chapter 25, and the District of Columbia Municipal Regulations, Title 5-E, Chapter 30.

## PROCEDURAL HISTORY

On September 14, 2022, Petitioners filed the *Complaint* alleging that ▇ and OSSE denied Student a FAPE by failing to provide Student transportation to school since the beginning of the 2022-23 school year. Respondent ▇ filed its response on September 23, 2022 and OSSE filed its response on September 24, 2022. Both respondents denied that they had denied Student a FAPE in any way.

The parties did not conduct a resolution meeting. A prehearing conference was conducted by video conference on October 7, 2022, and the Prehearing Order was issued on October 10, 2022. An Amended Prehearing Order was issued on November 9, 2022 to address the continuance of the hearing dates agreed to at the prehearing conference, to November 30, 2022.

On October 19, 2022, ▇ filed *LEA's Motion for Summary Judgment* ("*Motion*"). ▇ asserted that (1) as the SEA, OSSE was responsible for the oversight of special education programming within the District, (2) under District of Columbia ("District") regulations, transportation must be provided to a student if the student's IEP team determines the student is eligible for it and must be provided pursuant to "State-established criteria as prescribed in State-level policy," (3) OSSE established District policy in its Special Education Transportation Services Policy ("Policy") in which it assigned the OSSE Department of Transportation ("DOT") the sole legal responsibility for providing special education transportation services to students with disabilities when transportation is indicated as a necessary related service on an IEP, and (4) ▇ had complied with all relevant OSSE transportation policies. Consequently, ▇ argued, OSSE was responsible for any denial of FAPE caused by the failure to provide transportation to Student.

On October 28, 2022, OSSE filed *Office of the State Superintendent of Education's Opposition to the Motion for Summary Judgment of* ▇ ("*OSSE Opposition*"). OSSE argued that LEAs have the direct responsibility for providing FAPE under IDEA, and there is no District law that absolves the LEA of its obligation to provide FAPE as to transportation. Thus, OSSE argued, ▇ remained a necessary party.

On October 28, 2022, Petitioner filed *Petitioner's Cross-Motion for Summary Judgment* ("*Petitioner's Motion*"). Petitioner asserted that there was no dispute that Student missed "about" 22 school days due to the failure of ▇ and OSSE to provide Student transportation. Thus, Student had been denied FAPE by one or both agencies, and the only matter left for resolution at a hearing was the amount of compensatory education owed to Student. On November 19, 2022, I granted both motions, dismissing the *Complaint* as to ▇.

On November 18, 2022, Petitioner filed *Petitioner's Motion to Compel OSSE's Production of Records*. I overlooked the filing of this motion and did not respond to it prior to convening the hearing.

The due process hearing was conducted on November 30, 2022 by video conference with the assistance of two ▇ interpreters. The hearing was closed to the public at Petitioner's request. Respondent OSSE filed disclosures on November 18, 2022 containing a witness list of two witnesses and documents R1 through R3. Petitioner filed no objections to OSSE's exhibits, and OSSE's Exhibits R1-R3 were admitted into evidence. Petitioner filed disclosures on November 22, 2022, containing a witness list of three witnesses and documents P1 through P27. OSSE did not file objections to Petitioner's disclosures, and Petitioner's Exhibits P1-P14 and P16-P27 were offered and admitted into evidence.

Petitioner presented as witnesses in chronological order: Petitioner and Witness A. Witness A was admitted as an expert in special education programming and compensatory education. Respondent offered no testimonial evidence. At the conclusion of testimony, Petitioner's counsel gave an oral closing argument; OSSE declined to make a closing statement.

## ISSUES

As identified the *Amended Prehearing Order*, the issues to be determined in this case are as follows: whether ▇ and OSSE have failed to implement the transportation services in Student's Individualized Education Program ("IEP") since the beginning of the 2022-23 school year. OSSE did not file a response to the cross-motions, resulting in a concession that it did not provide transportation to Student from September 6 through October 4, 2022. The November 19, 2022 *Order* dismissed ▇ as a party and limited the issues to be resolved at the hearing: (1) whether OSSE failed to provide Student transportation on October 5, 2022, and (2) the amount of compensatory education services owed to Student, if any, for OSSE's failure to provide Student the transportation services set forth in Student's IEP.

## FINDINGS OF FACT

1. Student is X years old and attends School A during the 2022-23 school year.[2]

2. On March 3, 2022, when Student was in grade G at School B, ▇ amended Student's May 18, 2021 IEP."[3] The IEP team prescribed 28.50 hours per week of specialized instruction outside general education, two hours per month of speech-language ("S/L") services outside general education, four hours per month of behavioral support services ("BSS"), and a dedicated aide for 30 hours per week.[4] The team also determined that Student required transportation with the following specifications: (1) student would be the lone rider, (2) on a "non-yellow school bus, (3) young, female bus attendants who are skilled at managing peer conflict and

---

[2] Petitioners' Exhibits ("P:") 7 at page 1 (71). The exhibit number and exhibit page numbers are followed by the electronic page number in the disclosure in parentheses, i.e., P7:1 (71).
[3] P3:1 (16).
[4] *Id.* at 20 (90).

3

bullying, and (4) a dedicated aide.[5]

3. On May 27, 2022, ▮▮▮ issued a Prior Written Notice indicating that it could not finalize a draft IEP because testing was outdated.[6]

4. On August 23, 2022, OSSE received a Transfer Request Form ("TRF") requesting daily transportation for Student from his/her home to School A.[7] The TRF included the need for student to be the lone rider, on a non-yellow school bus, with young, female bus attendants who are skilled at managing peer conflict and bullying, and Student would be accompanied by the dedicated aide.[8]

5. On September 7, 9, 13-16, 19-23, 26-30, 2022, Petitioner notified School A that Student was not in school due to the lack of transportation.[9] Petitioner testified that OSSE offered Student no transportation from September 6, 2022 through October 4, 2022, and Student did not attend School A throughout that period.

6. On October 5, 2022, ▮▮▮ notified School A at 10:05 a.m. that "[Student's] private transportation started today. However, [Petitioner] was advised not to put [her/him] on the van as she did not know the driver. OSSE sent [Petitioner] a text informing her of [Student's] pick and drop off times. After speaking with Ms. ▮▮▮ from OSSE DOT and Mom this morning [Student] is prepared to start school tomorrow 10/6."[10] At 1:24 p.m., Petitioner notified ▮▮▮ and School A that Student "could not be present due to lack of information from the driver. For the safety of my ▮▮▮ I did not have the courage to put it today…."[11] Petitioner testified that OSSE provided her no information in advance about the driver assigned to transport Student to school. On the morning of October 5, 2022, while waiting for Student's transportation, a man approached her wearing flip-flops and introduced himself as the driver. Petitioner testified that the man declined to show her identification. Petitioner testified that she was uncomfortable allowing her child to go with the man without more information about him and declined transportation that day.

7. At 9:44 p.m. on October 5, 2022, OSSE sent Petitioner an email providing the van driver's name, pick-up time and drop-off time.[12]

8. Petitioner testified that OSSE began providing Student transportation on October 6, 2022.

9. Student missed 22 school days due to the lack of transportation.

10. Witness A, Petitioner's educational consultant, developed a Compensatory Education Plan based on Student's loss of 27 school days, including days during the week of

---

[5] *Id.* at 24 (94).
[6] P5:1 (65).
[7] P9:2, 5-6 (101, 104-5)
[8] *Id.* at 3 (102)
[9] P11:10, 12, 22- 25 (122, 124, 134-45, 147-48).
[10] P12:2 (150).
[11] *Id.* at 5 (153).
[12] *Id.* at 3 (151).

November 14, 2022.[13] That plan recommended that Student receive 60 hours of tutoring in math, reading, and writing, four hours of speech therapy, and eight hours of counseling.[14] Witness A testified that based on his review of Student's academic record, s/he would have suffered educational harm if s/he did not receive instruction or services for 22 days, particularly at the beginning of the school year. Based on a loss of 22 school days, Witness A opined that Student required 45 hours of tutoring, three hours of speech therapy, and six hours of counseling to compensate him/her for the lost services.

## CONCLUSIONS OF LAW

Based upon the above Findings of Fact, the arguments of counsel, and this Hearing Officer's own legal research, the Conclusions of Law of this Hearing Officer are as follows: The burden of proof in District of Columbia special education cases was changed by the local legislature through the District of Columbia Special Education Student Rights Act of 2014. That burden is expressed in statute as the following:

> Where there is a dispute about the appropriateness of the child's individual educational program or placement, or of the program or placement proposed by the public agency, the public agency shall hold the burden of persuasion on the appropriateness of the existing or proposed program or placement; provided, that the party requesting the due process hearing shall retain the burden of production and shall establish a prima facie case before the burden of persuasion falls on the public agency. The burden of persuasion shall be met by a preponderance of the evidence.[15]

The issues in this case do not involve an alleged failure of OSSE to provide an appropriate IEP or placement. Thus, under District of Columbia law, Petitioner bears the burden as to all the issues presented.[16]

**Whether ▮▮▮▮ and OSSE have failed to implement the transportation services in Student's IEP since the beginning of the 2022-23 school year.**

On May 5, 2010, the federal district court issued an order transferring responsibility for conducting day-to-day operations of the local school system's Division of Transportation from a Transportation Administrator appointed by the court to the District of Columbia.[17] It its *Response* to the *Complaint*, OSSE admitted that it provides special education transportation services when transportation is appropriately identified and documented on IEPs as a related service.

IDEA regulations provide that when an SEA provides services directly to students, it assumes the same obligations to provide FAPE as would an LEA:

---

[13] P26:1 (261). During the hearing, I sustained OSSE's objection to any alleged denial of FAPE beyond October 6, 2022, consistent with the *Order* of November 19, 2022.
[14] *Id.* at 3 (263).
[15] D.C. Code Sect. 38-2571.03(6)(A)(i).
[16] *Schaffer v. Weast*, 546 U.S. 49 (2005).
[17] *Petties v. District of Columbia*, Civil Action No. 95-0148 (D.D.C. May 5, 2010).

> If the SEA provides FAPE to children with disabilities, or provides direct services to these children, the agency must comply with any additional requirements of §§ 300.201 and 300.202 and §§ 300.206 through 300.226 as if the agency were an LEA…[18]

Under District law, OSSE receives all the funding for transportation of disabled students in the District and is charged with the responsibility for providing that transportation. "'Special Education Compliance Funding' means funds provided to public schools through the "Formula" to support … regulations regarding the provision of special education services to students with disabilities… For purposes of the Formula, transportation of students with disabilities and payment of tuition for private placements of children with disabilities are considered state level costs."[19]

> The cost of transportation for students with disabilities, tuition payments for private placements for students with disabilities, and the cost of performing state education functions for the District of Columbia are not covered by the Formula and shall be allocated by the Mayor and Council to the Office of the State Superintendent of Education ("OSSE") … The OSSE, as the state education agency for the District of Columbia, shall perform all state education functions for public charter schools and for DCPS, which are local education agencies.[20]

In furtherance of its obligation to provide transportation services to disabled students, OSSE promulgated its *Special Education Transportation Policy* (*"Policy*)*."*[21] The *Policy* provides that the OSSE Division of Student Transportation ("OSSE DOT") "shall provide special education transportation services to students with disabilities when transportation is appropriately identified and documented on an IEP as a related service under the IDEA."[22] The *Policy* sets forth eligibility criteria for transportation services for which the LEA's IEP teams are tasked with determining for each child.[23] The *Policy* imposes on LEAs the responsibility to upload all documentation associated with special education transportation services into specified databases within five days of the eligibility determination.[24] LEAs are required to recertify each student's continued eligibility for transportation services twice a year.[25] The *Policy* authorizes OSSE DOT to notify parents and the LEA if a student misses three consecutive days of transportation and to request an explanation. The LEA is responsible for communicating with parents to resolve absence issues. If OSSE DOT does not receive a satisfactory response within seven days, it is authorized to notify the parent and LEA of its intent to terminate services. If no satisfactory response is received within an additional three days, OSSE DOT is authorized to terminate services.[26]

Student's IEP includes transportation services as a related service. OSSE concedes that it is responsible for providing transportation services to special education students in the District

---

[18] 34 C.F.R. §300.175.
[19] D.C. Code § 38-2901 (11B) and (12).
[20] D.C. Code § 38-2907.
[21] *Petitioner's Opposition,* Exhibit P-2 at 1, OSSE Transportation PolicyV07292014.pdf(dc.gov)
[22] *Id*. at 3.
[23] *Id*. at 5-7.
[24] *Id*. at 12.
[25] *Id*. at 13.
[26] *Id*. at 10.

who are eligible for transportation services.[27] While OSSE imposes responsibilities on LEAs to determine students' eligibility for transportation services, once those determinations are made and the appropriate documentation is uploaded to designated databases, OSSE DOT provides the transportation services for all eligible disabled students in the jurisdiction. LEAs may be held responsible for any delays and expenses that result from failure to submit necessary data or documentation,[28] but there is no circumstance described in the *Policy* or District law that authorizes an LEA to provide transportation services. Nowhere in its *Response* did OSSE allege that ▇▇▇ failed in any way to specify Student's need for, or the nature of transportation services Student needed on the IEP, erred in determining Student's eligibility for transportation services, failed to populate the appropriate databases, or violated any other obligation that would impair OSSE DOT's ability to provide transportation services to Student.

OSSE's first argument was that there is no District law, regulation, or policy that relieves ▇▇▇ of its FAPE obligation. IDEA requires each state to ensure that FAPE is available to children with disabilities who need special education and related services.[29] To that end, IDEA provides that the SEA is responsible for ensuring that the requirements of the Act are carried out.[30] The SEA is also responsible for informing each public agency of its responsibility for ensuring effective implementation of procedural safeguards for children with disabilities.[31] As is discussed above, District law requires OSSE to provide transportation to children with disabilities. OSSE issued the *Policy* in which it informed LEAs of their obligations to provide OSSE with the information necessary for OSSE to carry out its obligation to provide services to the children whose IEPs require transportation. And IDEA regulations specifically provide that if an SEA provides direct services to children, it must comply with the regulations that would otherwise apply to the LEA.

The only practical and rational way to reconcile IDEA's requirement that LEAs provide FAPE, and IDEA's delegation to the states the manner in which they enforce the provisions of IDEA, is to conclude that District law has, in fact, relieved LEAs of the responsibility to provide transportation to children with disabilities. All of the District's funding for transportation is allocated to OSSE, and OSSE's *Policy* precludes any local agency other than DOT from providing transportation services to children with disabilities. Thus, to accept OSSE's position would be to enforce transportation obligations on LEAs for which there is not only no funding, but would also be unauthorized by local law and OSSE policy. There would be an issue of fact if ▇▇▇ had failed to comply with its obligation to submit timely and accurate TRFs, or if DOT notified the LEA that aspects of the requested transportation were unacceptable for some reason, but those potential defenses were not asserted by OSSE.

OSSE's argument on pages 3-4 of its *Opposition*, that it has made no affirmative determination to provide direct transportation services, despite District law, its own *Policy*, its concession in paragraph six of its *Response* that it provides those services, and its operation of DOT as the actual sole provider of transportation to children with disabilities in the District, can most charitably be characterized as disingenuous.

---

[27] *OSSE Response,* ¶ 6 at 2.
[28] *Petitioner's Motion,* Exhibit P-2 at 12.
[29] 20 U.S.C. § 1412(a)(1)(A).
[30] 20 U.S.C. § 1412(a)(11).
[31] 34 C.F.R. § 300.150.

Second, OSSE argued that the related service of special education transportation is more than operating a bus system. This may be true, but the only issue in this matter is the failure to provide Student transportation as a lone rider in a non-yellow school bus with a dedicated transportation aide from September 6, 2022 through October 5, 2022. OSSE never denied that these services were not provided or any of the other material facts alleged by ▉▉▉▉, and it never alleged that ▉▉▉▉ violated any obligation the LEA had to OSSE DOT to facilitate provision of these services. Under these circumstances, the fact that the LEA may later be tangentially involved in the delivery of transportation services in the event of a schedule change, disciplinary action, or some other speculative eventuality, does not change the fact that only OSSE DOT has the authority to provide the transportation services set forth in the IEP.

Third, OSSE argued that ▉▉▉▉ is the proper and necessary party in this case, not OSSE, because the LEA "is the first line provider of FAPE." Even though it admits that it operates the only bus system for children with disabilities in the District – in paragraph 6 of its *Response* and on page 7 of its *Opposition* – OSSE argue that its obligation should not be subject to enforcement through administrative due process. "It is OSSE's position that there is no legal theory which supports such jurisdiction in this tribunal. Any failure by OSSE to transport students is an issue for the District of Columbia government." Unfortunately for OSSE's third argument, IDEA provides this specific administrative forum to hold it accountable for direct services to children with disabilities for which it is charged with responsibility by District law, and for which it has assumed responsibility in its *Policy*. The statutory mandate that "the SEA is required to comply with IDEA requirements as if it were an LEA" when an SEA undertakes the provision of direct services would be meaningless if it were not enforceable through the due process procedures set forth in the regulations.

It is noteworthy that OSSE has cited no authority for the position it urges here, that ▉▉▉▉ should be held responsible for any denial of FAPE due to the failure to provide services that OSSE is statutorily obligated to provide, for which it issued the *Policy* and assumed full responsibility, and which, in fact, it does provide unilaterally through DOT. The one decision OSSE cited to support ▉▉▉▉ as the proper and necessary party has language that is more persuasive of OSSE being the only responsible party. OSSE correctly cites *Ellenberg v. New Mexico Military Institute* for the uncontroverted proposition that "'Local Education Agencies' (LEAs") are given primary responsibility for overseeing the actual provision of special education services to disabled children."[32] However, OSSE ignored the authorities cited by the court in the following paragraph that are specifically applicable to the situation in this case:

> Should an LEA or state agency prove "unable to establish and maintain programs of free appropriate public education in compliance with IDEA," the SEA must provide special education and related services directly to disabled children. 20 U.S.C. § 1413(h)(1). In so doing, the SEA "may provide special education and related services… In such a manner and at such locations (including regional or state centers) as the State agency considers appropriate." § 1413(h)(2). However, the SEA is required to comply with IDEA requirements as if it were an LEA. 34 C.F.R. § 300.175.[33]

---

[32] 478 F.3d 1262, 1269 (10th Cir. 2007).
[33] *Id*.

The facts in *Ellenberg* are not comparable to the instant case. There, the court ruled that the parents failed to exhaust administrative remedies by initiating federal litigation without first pursuing an IEP, placement, and due process proceedings at the state level.[34] Here, the superior state agency, OSSE, with authority bestowed by the District government to oversee and establish policies for the inferior state agencies, determined that LEAs were incapable of providing efficient transportation services to the District's children with disabilities, and undertook that responsibility to ensure the District's compliance with IDEA. *Ellenberg* and the clear wording of the regulations instruct that when OSSE undertook that responsibility, it assumed the obligations that otherwise would have been imposed on the LEA.

For these reasons, on November 19, 2022, I issued an order in which I dismissed ▓▓▓ as a party and ruled that OSSE was solely responsible for the failure to provide Student transportation to School A.[35] The only factual issue to be resolved at the hearing was whether OSSE should be held responsible for the lack of transportation on October 5, 2022. Petitioner testified that she was uncomfortable turning her child over to a man dressed casually in flip-flops who was unwilling to provide identification. On the evening of October 5th, OSSE sent Petitioner an email providing the van driver's name, pick-up time and drop-off time. OSSE offered no testimony as to when or what information it provided Petitioner prior to the pick-up time on October 5th. Therefore, I conclude that Petitioner has met her burden of proving that OSSE denied Student a FAPE by failing to provide Student transportation twenty-two school days, from September 6, 2022 through October 5, 2022.

**RELIEF**

For relief, Petitioner requests, *inter alia*, (1) an order requiring Respondents to reimburse Petitioner for expenses incurred transporting Student to and from school, and (2) compensatory education services or an assessment to determine what compensatory education services are due to Student, (3) an order for ▓▓▓ and/or OSSE to provide transportation to Student.

Petitioner has the burden of establishing entitlement to any requested relief, including the type and amount of compensatory education services that would compensate the student for the services that were allegedly denied. Absent such a showing, any award by the Hearing Officer would be arbitrary.

> Accordingly, just as IEPs focus on disabled students' individual needs, so must awards compensating past violations rely on individualized assessments… In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.[36]

---

[34] *Id*. at 1276-1279.
[35] I have recounted the history of the cross-motions for summary judgment because HODs are accessible online while hearing officers' orders are not. The rulings by the hearing officers in this jurisdiction are not consistent on the issue of LEA responsibility for transportation. Future litigants should have access to these divergent rulings until the issue is resolved conclusively by the courts.
[36] *Reid v. District of Columbia*, 401 F.3d 516, 524, (D.C. Cir. 2005). *See also*, *B.D. v. District of Columbia*, 817 F.3d 792, 799-800 (D.C. Cir. 2016).

Thus, Petitioner must show (1) what educational harm Student suffered as a result of the alleged denial of FAPE, (2) what type and amount of compensatory services Student requires to put ▮ in the position s/he would be had there been no denial of FAPE, and (3) the assessments or educational, psychological, or scientific studies that support the type and amount of services requested.[37]

Witness A testified that his compensatory education plan was based on his experience as a special educator and special education consultant, including the development of approximately twenty-five compensatory education plans. He opined that Student's academic history suggests that s/he would suffer educational harm by being denied services for twenty-two school days at the beginning of the school year. He also opined that because one-on-one instruction is more "potent" than instruction in a classroom, 45 hours of individual tutoring would be adequate compensation for the loss of full-time (120 hours) specialized instruction over 22 days. OSSE did not cross-examine Witness A or offer testimony to refute the validity of his plan. Therefore, I conclude that Petitioner has met her burden of proving that Student is entitled to compensatory education. While Witness A's testimony as to the amount of tutoring Student requires is credible, the recommendations as to speech therapy (three hours) and behavioral counseling (six hours) exceed the two hours per month of S/L services and four hours per month of BSS prescribed in Student's March 3, 2022 IEP.

## ORDER

Upon consideration of the *Complaint*, the responses filed by the respondents, the pleadings filed regarding the cross-motions for summary judgment, the exhibits admitted into evidence, the testimony of the two witnesses during the hearing, and Petitioner's closing argument, it is hereby

**ORDERED,** that OSSE shall fund forty-five (45) hours of independent tutoring in math, reading, and writing, two hours of speech therapy, and four hours of psychological counseling for Student.

**IT IS FURTHER ORDERED**, that *Petitioner's Motion to Compel OSSE's Production of Records* is **DENIED** as moot.

---

[37] *See, Gill v. District of Columbia*, 751 F.Supp.2d 104, 111-12 (D.D.C. 2010) (petitioners offered neither reasoning nor factual findings to support the appropriateness of their proposed compensatory education plan).

# APPEAL RIGHTS

This decision is final except that either party aggrieved by the decision of the Impartial Hearing Officer shall have ninety (90) days from the date this decision is issued to file a civil action, with respect to the issues presented in the due process hearing, in a district court of the United States or the Superior Court of the District of Columbia as provided in 34 C.F.R. §303.448(b).

*Terry Michael Banks*
Terry Michael Banks
Hearing Officer

Date: November 30, 2022

Copies to:   Attorney A
Attorney B
Attorney C
Attorney D
Attorney E
OSSE Office of Dispute Resolution
OSSE Division of Specialized Education
▮▮▮▮▮/DCPS
▮▮▮▮▮/DCPS